IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MARY ANN FOX individually, and as a representative of a Class of Participants and Beneficiaries of the HCA 401(k) Plan,<br><br>    Plaintiff,<br><br>    v.<br><br>HCA HEALTHCARE INC., UNDER 29 U.S.C. §1132(a)(2)<br><br>    and<br><br>THE HCA 401(K) PLAN ADMINISTRATION COMMITTEE,<br><br>    Defendants. | Civil Action No. |

## **CLASS ACTION COMPLAINT**

Plaintiff Mary Ann Fox, individually and on behalf of all other similarly situated participants in and beneficiaries of the HCA 401(k) Plan (the "Class"), by their undersigned counsel, brings this class action complaint against the defendants listed herein:

1

# **INTRODUCTION**

1. Each year, Defendants HCA Healthcare Inc. and the HCA 401(K) Plan Administration Committee must decide between using certain assets of the HCA 401(k) Plan to either cover participant's costs or to cover HCA Healthcare Inc.'s costs. In every year since 2019, they chose to cover HCA Healthcare Inc.'s costs, without any regard for, or consideration of, what was in the best interest of the plan, its participants, and their beneficiaries. These actions were unlawful.

2. Under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1193c, the assets of a covered plan "shall be held for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the plan," *id*. § 1103(c)(1). Plan assets "shall never inure to the benefit of any employer." *Id*.

3. In managing a plan and its assets, plan fiduciaries must act "solely in the interest of participants." *Id*. § 1104(a)(1). And they must do so "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar

2

with such matters would use in the conduct of an enterprise of a like character and with like aims." *Id.* § 1104(a)(1)(B).

4. These fiduciary duties of loyalty and prudence govern the conduct of plan fiduciaries and impose on them "the highest duty known to the law." *Donovan v. Beirwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982).

5. In addition to these broad duties, ERISA prohibits plan fiduciaries from engaging in certain specific actions. Specifically, fiduciaries may not cause the plan to engage in any transaction prohibited by 29 U.S.C. § 1106(a)(1), nor may they "deal with the assets of the plan in [their] own interest." 29 U.S.C. § 1106(a)–(b).

6. HCA Healthcare Inc. ("HCA" or the "Company") and the HCA 401(K) Plan Administration Committee (the "Committee") (collectively "Defendants") violated ERISA by 1) breaching their fiduciary duties of loyalty and prudence, 2) using plan assets for the benefit of participant employer Defendant HCA, 3) dealing with the assets of the plan in its own interest, and 4) causing the plan to engage in prohibited transactions.

3

7.     In addition to these violations, HCA also violated ERISA by failing to monitor the Committee to ensure that it was performing its delegated fiduciary obligation.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction in this ERISA matter under 28 U.S.C. § 1331 and pursuant to 29 U.S.C. § 1332(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA, 29 U.S.C. § 1001 *et seq*.

9.     This Court has personal jurisdiction over Defendants because the plan is administered in this District, they transact business in this District, reside in this District, and have significant contacts with this District.

10.    Venue is appropriate in this District within the meaning of 29 U.S.C. §1132(e)(2) because some or all of the violations of ERISA described in this complaint occurred in this District and Defendants reside and may be found in this District.

11.   In conformity with 29 U.S.C. § 1132(h), Plaintiff served the original Complaint by certified mail on the Secretary of Labor and the Secretary of the Treasury.

## PARTIES

12.   The HCA 401(k) Plan (the "Plan") is a Section 401(k) "defined contribution" employee pension benefit plan under 29 U.S.C. §§ 1002(2)(A) and 1002(34), meaning that HCA's contribution to the payment of Plan costs is guaranteed but the pension benefits are not. The Plan is subject to the provisions of ERISA pursuant to 29 U.S.C. § 1003(a).

13.   Plaintiff Mary Ann Fox is a resident of Gainesville, Florida

14.   During the Class Period, defined in ¶57, Plaintiff Fox was a participant in the Plan, as defined under 29 U.S.C. § 1002(7).

15.   Plaintiff Fox started at HCA in 2008 and is still currently employed with HCA.

16.   Plaintiff Fox joined the Plan in or around 2008 and is a current Participant of the Plan.

5

17.    Since becoming a Plan participant, Plaintiff's individual account has been charged with a share of the Plan's administrative expenses. These charges have reduced the monetary value of Plaintiff's individual account.

18.    Plaintiff has Article III standing as a Plan participant to bring this action on behalf of the Plan because she suffered actual injuries to her own Plan account. Specifically, Plaintiff's account was charged for the Plan's administrative expenses that otherwise would have been paid for by forfeited contributions had Defendants not violated ERISA. This injury is fairly traceable to Defendants' violations of ERISA. The harm is likely to be redressed by a favorable judgment providing equitable relief to Plaintiff and the Class.

19.    Having established Article III standing, Plaintiff may seek recovery under 29 U.S.C. § 1132(a)(2) on behalf of the Plan.

20.    Defendant HCA Healthcare Inc. is a for-profit operator of health care facilities organized under the laws of the State of Delaware and headquartered in Nashville, Tennessee. It employes more than 300,000 individuals.

6

21. HCA, as Plan Sponsor, acted through its officers, including through the individual members of the HCA 401(K) Plan Administration Committee, to perform Plan-related fiduciary functions in the course and scope of their business. HCA had a duty to appoint and oversee those appointees, and accordingly had a concomitant fiduciary duty to monitor, supervise, and remove those appointees under appropriate circumstances. For these reasons, HCA is a fiduciary of the Plan, within the meaning of 29 U.S.C. § 1002(21)(A).

22. The Plan Administrator is the HCA 401(K) Plan Administration Committee. As the Plan Administrator, the Committee members are fiduciaries with day-to-day administration and operation of the Plan under 29 U.S.C. § 1002(21)(A). The Committee has exclusive responsibility and complete discretionary authority to control the operation, management, and administration of the Plan, with all powers necessary to properly fulfill such responsibilities. For these reasons, the Committee is a fiduciary of the Plan, within the meaning of 29 U.S.C. § 1002(21)(A).

## FACTUAL ALLEGATIONS

23.    As required by 29 U.S.C. § 1102(a)(1), the Plan is maintained under a written document. At all times relevant to the allegations in this Complaint the governing Plan document was restated on January 1, 2015.

24.    In accordance with 29 U.S.C. § 1103(a), the assets of the Plan are held in a trust fund.

25.    As an individual account, defined contribution retirement plan, the Plan "provides for an individual account for each participant and for benefits solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeiture of accounts of other participants which may be allocated to such participant's account." 29 U.S.C. § 1002(34).

26.    The Plan is funded by a combination of wage withholdings by Plan participants and Company matching contributions that are deposited into the Plan's trust fund. Upon their deposit into the Plan's trust fund, all participant contributions and Company matching contributions become assets of the Plan.

27.     The Plan provides that HCA, in its capacity as Plan sponsor, will make matching contributions to the Plan equal to 100% of the participant's salary deferral contribution from the applicable period, up to the following maximum percentages:

| Years of Service as of End of Plan Year | Maximum Match of Eligible Salary for Plan Year |
| --- | --- |
| 0–4 | 3% |
| 5–9 | 4% |
| 10–14 | 6% |
| 15–19 | 7% |
| 20–24 | 8% |
| 25+ | 9% |

28.     Participants in the Plan are immediately vested in their own contributions, along with any income or losses on those balances.

29.     Participants become vested in the Company's matching contributions, plus any income or losses on those balances, ratably, beginning with the completion of two years of service, and become 100% vested upon completion of six years of service.

30.     Upon their deposit into the Plan's trust fund, all participant contributions and Company matching contributions become assets of the Plan.

9

31.     When a participant has a break in service prior to full vesting of the Company's matching contributions, the participant forfeits the balance of unvested Company contributions in his or her individual account and Defendants exercise discretionary authority and control over how these Plan assets (called "forfeitures") are thereafter reallocated.

32.     The Plan requires Defendants to decide among options for using the forfeitures in the Plan. The Plan provides that "[f]orfeitures will be allocated . . . to reduce Employer contributions." However, "[n]otwithstanding the foregoing, the Plan Sponsor may, in its sole *discretion*, elect to pay administrative expenses of the Plan with Forfeiture, and the amount so used will be subtracted from the amount of Forfeitures used to reduce Employer Contributions." (emphasis added) Whether one of these options or the other is in the best interests of participants depends on the particular facts and circumstances present at the time of the allocation decision.

33.     Using the forfeitures "to reduce" employer contributions is always in the best interest of HCA because that option allows HCA to contribute less new money to the plan.

10

34. If there is a risk that HCA may be financially unable to satisfy its contribution obligations, this option might also be in the best interests of participant because it would provide participants with employer contributions that they might not otherwise receive.

35. For each year between 2019 and 2023, HCA had in excess of $5 billion in net income and was under no risk of defaulting on its contribution obligations to the Plan. Nevertheless, throughout that period, Defendants consistently based the decision of how to allocate forfeitures solely on their own self-interests and failed to consider the interests of the Plan and its participants.

36. Absent a risk that HCA would be unable to satisfy its contribution obligations, HCA's use of the forfeitures "to reduce" employer contributions is not in the best interest of participants, as participants then pay for *all* of the Plan's expenses out of their individual accounts, leaving participants with less assets for distribution or investment.

37. Conversely, absent a risk that HCA would be unable to satisfy its contribution obligations, HCA's use of forfeitures "to pay reasonable

11

expenses of the Plan" is in the participants' best interest, as it reduces or eliminates amounts otherwise charged to participant's accounts to cover these expenses, leaving participants with more assets for distribution or investment.

38.    In deciding how to use the Plan's forfeited assets, Defendants are presented with a conflict of interest in their administration of the Plan.

39.    Although ERISA requires Defendants to defray the Plan's expenses, *see* 29 U.S.C. § 1104(a)(1)(A)(ii), and although the Plan permits Defendants to use the forfeited funds to pay Plan expenses, since 2019 Defendants have never used any forfeited funds for that purpose.

40.    Instead, since 2019 Defendants consistently chose to use the forfeitures for the benefit of HCA and to the detriment of the Plan and its participants. Because Defendants chose to allocate forfeitures to HCA's benefit, participant accounts were each charged with an allocation of the expenses paid by the Plan, which each participant  shares equally.

41.    The administrative expenses paid by the plan each year since 2019 have been as follows:

12

| Year | Amount of Administrative Expenses Paid |
|------|---------------------------------------|
| 2019 | $18,874,276 |
| 2020 | $19,324,653 |
| 2021 | $20,226,160 |
| 2022 | $21,215,393 |
| 2023 | $22,036,709 |
| **Total** | **$101,677,191** |

42. Since 2019 all participant accounts, including Plaintiff's account, have been charged with administrative expenses.

43. The deduction of administrative expenses from the participants' accounts reduced the funds available to participants for distribution and/or investing and deprived the Plan of funds that it otherwise would have earned on the amounts deducted. Therefore, the participants' account balances would have been greater had Defendants elected to use forfeitures to pay Plan expenses.

44. For each year between 2019 and 2024, HCA had sufficient cash and equivalents on hand to satisfy its contribution obligations to the Plan. Nevertheless, throughout that period, Defendants consistently decided to allocate forfeitures solely on their own self-interests and failed to consider the interests of the Plan and its participants.

13

45.     Rather than defray any part of the Plan's administrative expenses charged to participants, from 2019–2024 Defendants utilized forfeited funds to reduce HCA's matching contributions in the amounts that follow:

| Year | Amount Contributions Were Reduced by Forfeitures |
|------|--------------------------------------------------|
| 2019 | $39,291,497 |
| 2020 | $39,366,612 |
| 2021 | $51,056,425 |
| 2022 | $44,583,945 |
| 2023 | $48,094,777 |
| **Total** | **$222,393,256** |

46.     Moreover, from 2019–2024, rather than defray any part of the Plan's administrative expenses charged to participants, Defendants failed to exercise their discretion over the Plan's Forfeitures in a timely fashion, leaving unallocated forfeitures at the year's end in the amounts that follow:

| Year | Amount of Unallocated Forfeitures at the Years End |
|------|---------------------------------------------------|
| 2019 | $38,069,074 |
| 2020 | $39,437,298 |
| 2021 | $51,032,139 |
| 2022 | $44,553,825 |
| 2023 | $48,058,193 |

14

## CLASS ACTION ALLEGATIONS

47.   29 U.S.C. § 1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to enforce a breaching fiduciary's liability to the Plan under 29 U.S.C. § 1109(a).

48.   In acting in this representative capacity and to enhance the due process protections of unnamed participants and beneficiaries of the Plan, as an alternative to direct individual actions on behalf of the Plan under 29 U.S.C. § 1132(a)(2), Plaintiff seeks to certify this action as a class action on behalf of all Plan participants and beneficiaries. Plaintiff seeks to certify, and to be appointed as representative of, the following class:

> Class: All participants and beneficiaries of the HCA 401(k) Plan (excluding Defendants or any participant/beneficiary who is a fiduciary to the Plan) beginning six years prior to the date of filing and running through the date of judgment ("Class Period").

49.   **Numerosity – Federal Rule of Civil Procedure 23(a)(1)**. The class contains over 300,000 members and is so large that joinder of all its members is impracticable.

15

50.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3)**. Numerous common questions of law and fact exist as to Plaintiff and the other Class members because Defendants owed fiduciary duties to the Plan and took the actions and omissions alleged as to the Plan and not as to any individual participant. These common questions predominate over individualized issues. Common questions of law and fact include but are not limited to the following:

a.   Whether Defendants are fiduciaries liable for the remedies provided by 29 U.S.C. § 1109(a);

b.   Whether Defendants breached their fiduciary duties of prudence and loyalty to the Plan;

c.   Whether Defendants caused the Plan to engage in prohibited transactions;

d.   Whether the Defendants allowed plan assets to inure to the benefit of HCA;

e.   Whether Defendants dealt with the assets of the plan in its own interest;

16

f. What are the losses to the Plan resulting from each of the ERISA violations described in b–e; and

g. What Plan-wide equitable and other relief the Court should impose in light of Defendants' breach of duty.

**51. Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the other Class members because (a) Plaintiff was a participant in the Plan during the time Class Period, and (b) Defendants' misconduct harmed all participants in the Plan.

**52. Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff will adequately represent the Class because she (a) was a participant in the Plan during the Class Period, (b) has no interest that conflicts with the Class, (c) is committed to the vigorous representation of the Class, and (d) has engaged experienced and competent lawyers to represent the Class.

53. **Risk of Inconsistent/Dispositive Adjudications – Federal Rule of Civil Procedure 23(b)(1).** Certification under Federal Rule of Civil Procedure 23(b)(1) is appropriate, because prosecution of separate actions for these breaches of fiduciary duties by

17

individual participants and beneficiaries would create the risk of (a) inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendant concerning its discharge of fiduciary duties to the Plan and personal liability to the Plan under 29 U.S.C. § 1109(a), or (b) adjudications by individual participants and beneficiaries regarding these breaches of fiduciary duties and remedies for the Plan would, as a practical matter, be dispositive of the interests of the participants and beneficiaries who are not parties to the adjudication, or would substantially impair those participants' and beneficiaries' ability to protect their interests.

54. **Declaratory and Injunctive Relief - Federal Rule of Civil Procedure 23(b)(2)**. Certification under Federal Rule of Civil Procedure 23(b)(2) is appropriate because, as alleged in this complaint, Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive of corresponding declaratory relief is appropriate respecting the Class as a whole.

55. **Damages – Federal Rule of Civil Procedure 23(b)(3).** Certification under Federal Rule of Civil Procedure 23(b)(3) is

appropriate because (a) as discussed above, common issues predominate individual issues, and (b) a class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. Specifically, the damages or other financial detriment suffered by Plaintiff and each of the other Class Members are small compared to the burden and expense that would be required to individually litigate their claims against Defendants, rendering it impracticable for Class Members to individually seek redress for Defendants' wrongful conduct. Moreover, even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefit of single adjudication, economy of scale, and comprehensive supervision by a single court.

56. Plaintiff's attorneys are experienced in complex ERISA and class litigation and will adequately represent the Class.

57.    The claims brought by Plaintiff arise from fiduciary breaches as to the Plan in its entirety and do not involve mismanagement of individual accounts, and thus internal exhaustion of these claims are not required.

## CLAIMS

### FIRST CLAIM FOR RELIEF
**Breach of ERISA Duty of Loyalty**
**(29 U.S.C. § 1104(a)(1)(A))**

58.    Plaintiff realleges and incorporates herein by reference each allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

59.    Plaintiff asserts this claim on behalf of the Class.

60.    Defendants are fiduciaries of the Plan under 29 U.S.C. §§ 1002(21)(A) and/or 1102(a)(1).

61.    Pursuant to 29 U.S.C. § 1104(a)(1)(A), Defendants were required to discharge their duties to the Plan "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."

20

62.     Since 2019, Defendants have repeatedly breached their duty of loyalty with respect to their control and management of the Plan's assets by invariably choosing to use the Plan's forfeited funds for the benefit of the Company rather than solely in the interest of the participants and their beneficiaries.

63.     Instead of using forfeited funds in the interest of participants by reducing or eliminating the administrative expenses charged to their individual accounts, Defendants chose to use these Plan assets for the purpose of reducing the Company's own contributions to the Plan, saving the Company tens of millions of dollars each year at the Plan's and its participants' expense.

64.     As a direct and proximate result of Defendants' fiduciary breaches described in this count, the Plan's assets were decreased, and its participants and their beneficiaries incurred avoidable expense deductions to their individual accounts. These injuries caused the Plan to suffer losses in the amount of the Plan assets that were substituted for future employer contributions and the lost investment returns on those assets.

21

65.     Each Defendant knowingly participated in the other Defendant's breach, knowing that such acts were a breach. Each Defendants' breach enabled the other Defendant to commit a breach of its duty. And, each Defendant, knowing of the other Defendant's breach, failed to make reasonable efforts under the circumstances to remedy the breach. For these independent reasons, each Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. § 1105(a).

66.     Pursuant to 29 U.S.C. § 1109, Defendants are personally liable and are subject to appropriate equitable and remedial relief.

## SECOND CLAIM FOR RELIEF
### Breach of ERISA Duty of Prudence
### (29 U.S.C. § 1104(a)(1)(B))

67.     Plaintiff realleges and incorporates herein by reference each allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

68.     Plaintiff asserts this claim on behalf of the Class.

69.     Defendants are fiduciaries of the Plan under 29 U.S.C. §§ 1002(21)(A) and/or 1102(a)(1).

22

70.     Pursuant to 29 U.S.C. § 1104(a)(1)(B), Defendants were required to discharge their duties with respect to the Plan "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

71.     Since 2019, Defendants have repeatedly breached their duty of prudence with respect to their control and management of the Plan's assets.

72.     In deciding how to allocate forfeitures, Defendants utilized an imprudent and flawed process. Despite the conflict of interest presented by this decision, Defendants failed to undertake any reasoned and impartial decision-making process to determine which use of the Plan's forfeited funds was in the best interest of the Plan's participants. Instead, without any consideration of what was in the interest of the Plan's participants and their beneficiaries, Defendants invariably chose to use the Plan's forfeited funds for the benefit of the Company.

73.    A prudent fiduciary would have established a process for determining, after considering all relevant factors, which use of plan assets better served the Plan's participants and their beneficiaries. Defendants failed to do so.

74.    As a direct and proximate result of Defendants' fiduciary breaches described in this count, the Plan's assets were decreased, and its participants and their beneficiaries incurred avoidable expense deductions to their individual accounts. These injuries caused the Plan to suffer losses in the amount of the Plan assets that were substituted for future employer contributions and the lost investment returns on those assets.

75.    Each Defendant knowingly participated in the other Defendant's breach, knowing that such acts were a breach. Each Defendants' breach enabled the other Defendant to commit a breach of its duty. And, each Defendant, knowing of the other Defendant's breach, failed to make reasonable efforts under the circumstances to remedy the breach. For these independent reasons, each Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. § 1105(a).

24

76.     Pursuant to 29 U.S.C. § 1109, Defendants are personally liable and are subject to appropriate equitable and remedial relief.

### THIRD CLAIM FOR RELIEF
### Breach of ERISA's Anti-Inurement Provision
### (29 U.S.C. § 1103(c)(1))

77.     Plaintiff realleges and incorporates herein by reference each allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

78.     Plaintiff asserts this claim on behalf of the Class.

79.     Pursuant to 29 U.S.C. § 1103(c)(1), "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purpose of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan."

80.     The Company's contributions that a participant forfeits because that participant took a break in service prior to those contributions fully vesting are assets of the Plan.

81.     Defendants caused the assets of the plan to inure to the benefit of the Company in violation of 29 U.S.C. 1103(c)(1) by deciding to

25

use these Plan assets as a substitute for the Company's own future contributions to the Plan for the purpose of saving the Company tens of millions of dollars in contribution expenses.

82. As a direct and proximate result of Defendants' fiduciary breaches described in this count, the Plan's assets were decreased, and its participants and their beneficiaries incurred avoidable expense deductions to their individual accounts. These injuries caused the Plan to suffer losses in the amount of the Plan assets that were substituted for future employer contributions and the lost investment returns on those assets.

83. Each Defendant knowingly participated in the other Defendant's breach, knowing that such acts were a breach. Each Defendants' breach enabled the other Defendant to commit a breach of its duty. And, each Defendant, knowing of the other Defendant's breach, failed to make reasonable efforts under the circumstances to remedy the breach. For these independent reasons, each Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. § 1105(a).

26

84.    Pursuant to 29 U.S.C. § 1109, Defendants are personally liable and are subject to appropriate equitable and remedial relief.

## FOURTH CLAIM FOR RELIEF
### Prohibited Transactions
### (29 U.S.C. § 1106(a)(1))

85.    Plaintiff realleges and incorporates herein by reference each allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

86.    Plaintiff asserts this claim on behalf of the Class

87.    Defendants are fiduciaries of the Plan under 29 U.S.C. §§ 1002(21)(A) and/or 1102(a)(1).

88.    Pursuant to 29 U.S.C. § 1106(a)(1), "[a] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . . exchange . . . of any property between the plan and a party in interest . . . or use by or for the benefit of a party in interest, of any assets of the plan."

89.    Because HCA and the Committee are fiduciaries of the Plan and HCA is the employer of Plan participants, both are parties in interest under 29 U.S.C. § 1002(14).

27

90. By choosing to use the Plan's forfeited funds, which are property of the Plan, to defray HCA's future employer contributions to the Plan, Defendants caused the Plan to engage in transactions that constituted a direct or indirect exchange of existing Plan property to HCA, and/or caused the use of Plan assets by or for the benefit of HCA.

91. As a direct and proximate result of Defendants' fiduciary breaches described in this count, the Plan's assets were decreased, and its participants and their beneficiaries incurred avoidable expense deductions to their individual accounts. These injuries caused the Plan to suffer losses in the amount of the Plan assets that were substituted for future employer contributions and the lost investment returns on those assets.

92. Each Defendant knowingly participated in the other Defendant's breach, knowing that such acts were a breach. Each Defendants' breach enabled the other Defendant to commit a breach of its duty. And, each Defendant, knowing of the other Defendant's breach, failed to make reasonable efforts under the circumstances to remedy the

28

breach. For these independent reasons, each Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. § 1105(a).

93. Pursuant to 29 U.S.C. § 1109, Defendants are personally liable and are subject to appropriate equitable and remedial relief.

**FIFTH CLAIM FOR RELIEF**
**Prohibited Transactions**
**(29 U.S.C. § 1106(b)(1))**

94. Plaintiff realleges and incorporates herein by reference each allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

95. Plaintiff asserts this claim on behalf of the Class.

96. Defendants are fiduciaries of the Plan under 29 U.S.C. §§ 1002(21)(A) and/or 1102(a)(1).

97. Pursuant to 29 U.S.C. § 1106(b), "[a] fiduciary with respect to a plan shall not," among other things, "deal with the assets of the plan in his own interest or for his own account."

98. By utilizing forfeited Plan assets as a substitute for future employer contributions to the Plan for the purpose of saving the Company

tens of millions of dollars, Defendants dealt with the assets of the Plan in their own interest and for their own account.

99. As a direct and proximate result of Defendants' fiduciary breaches described in this count, the Plan's assets were decreased, and its participants and their beneficiaries incurred avoidable expense deductions to their individual accounts. These injuries caused the Plan to suffer losses in the amount of the Plan assets that were substituted for future employer contributions and the lost investment returns on those assets.

100. Each Defendant knowingly participated in the other Defendant's breach, knowing that such acts were a breach. Each Defendants' breach enabled the other Defendant to commit a breach of its duty. And, each Defendant, knowing of the other Defendant's breach, failed to make reasonable efforts under the circumstances to remedy the breach. For these independent reasons, each Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. § 1105(a).

101. Pursuant to 29 U.S.C. § 1109, Defendants are personally liable and are subject to appropriate equitable and remedial relief.

30

## SIXTH CLAIM FOR RELIEF
### Failure to Monitor Other Fiduciaries

102.  Plaintiff realleges and incorporates herein by reference each allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

103.  Plaintiff asserts this claim on behalf of the Class.

104.  This claim is asserted against Defendant HCA only.

105.  Defendant HCA is a fiduciary of the Plan under 29 U.S.C. §§ 1002(21)(A) and/or 1102(a)(1).

106.  Defendant HCA had the authority to appoint, oversee, and remove members or individuals of the Committee responsible for deciding how to use the Plan's forfeited assets. Defendant HCA knew or should have known that these fiduciaries had critical responsibilities for the Plan.

107.  In light of this authority, Defendant HCA had a duty to monitor the Committee to ensure that they were adequately performing their fiduciary obligations, and to take prompt and effective action to protect the Plan in the event that these individuals were not fulfilling those duties.

31

108. Defendant HCA breached its fiduciary monitoring standard with respect to the Committee by, among other things, (a) failing to monitor the Committee's management and use of forfeited funds in the Plan, and (b) by failing to take steps to ensure that the Committee was discharging its duties with respect to Plan assets for the sole benefit of Plan participants and beneficiaries.

109. As a direct result of HCA's breach of its fiduciary duty to monitor, the Plan suffered losses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays the Court enter judgement against Defendants on all respective claims against them and request that the Court award the following relief:

A. An order certifying the Class as requested herein, designating Plaintiff as Class Representative, and appointing Plaintiff's attorneys as Class Counsel;

B. A Declaration that the Defendants are Plan fiduciaries and have breached their fiduciary duties under ERISA as described in Counts One and Two;

32

C. A Declaration that the Defendants engaged in unlawful conduct as described in Counts Three through Five;

D. A Declaration that the Defendant HCA breached its duty to monitor other fiduciaries as described in Count Six;

E. An Order compelling the Defendants to make good to the Plan all losses to the Plan resulting from Defendants' breaches of ERISA, including restoring to the Plan all losses, restoring to the Plan all profits Defendants made through use of the Plan's assets, and restoring to the Plan all profits which its participants would have made if the defendants had fulfilled their obligations under ERISA;

F. An Order requiring Defendants to disgorge all profits received from, or in respect of, the Plan, and/or equitable relief pursuant to 29 U.S.C. § 1132(a)(2) in the form of an accounting for profits, imposition of constructive trust, or surcharge against Defendants as necessary to effectuate relief, and to prevent Defendants' unjust enrichment;

33

G. An Order enjoining Defendants from any further violation of their ERISA fiduciary responsibilities, obligations, and duties relating to the reallocation of the Plans forfeited assets;

H. Other equitable relief to redress Defendants' illegal practices and to enforce the provisions of ERISA as may be appropriate, including appointment of an independent fiduciary or fiduciaries to run the Plan and removal of plan fiduciaries deemed to have breached their fiduciary duties;

I. An award of pre-judgment interest;

J. An award of attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g) and the common fund doctrine; and

K. Such other and further relief as the Court deems equitable and just.

DATED: February 17, 2025          Respectfully submitted,


/s/Adam A. Edwards
Adam A. Edwards (TN BPR #023253)
William A. Ladnier (TN BPR #034316)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
800 S. Gay Street, Suite 1100
Knoxville, Tennessee 37938
Telephone: 865-247-0080

34

aedwards@milberg.com
wladnier@milberg.com

Adam J. Levitt*
Daniel R. Ferri*
Elijah G. Savage*
**DICELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Telephone: 312-214-7900
alevitt@dicellolevitt.com
dferri@dicellolevitt.com
esavage@dicellolevitt.com

Sharon S. Almonrode*
**THE MILLER LAW FIRM**
950 West University Drive, Suite 300
Rochester, Michigan 48307
Telephone: 248-841-2200
ssa@millerlawpc.com

***Counsel for Plaintiff and the
Proposed Class***

\* *pro hac vice* motions to be filed